UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
DETROIT

*In Re:*
Burman's Tree Services, LLC,

              Debtor.

Case No. 26-41101-lsg
Honorable Lisa S. Gretcho
Chapter 11, Subchapter V

_____/

## FIRST DAY MOTION FOR AUTHORITY TO USE CASH COLLATERAL AND GRANT ADEQUATE PROTECTION

1. On February 2, 2026, Burman's Tree Services, LLC filed a voluntary petition initiating this Chapter 11, Subchapter V case and is now operating its business as a debtor-in-possession.

2. Debtor brings this motion for use of cash collateral under 11 U.S.C. 363(c)(2) in accordance with F.R.Bankr.P. 4001(a)(b) and L.B.R,. 4001-2. A proposed Order Authorizing Debtor's Use of Cash Collateral is attached as Exhibit 1 to this motion.

3. The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

4. The Court's consideration of this Motion constitutes a core proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (K) and (M).

5. Attached as Exhibit 2 is the affidavit of Adam Burman in support of first day motions.

6. The Debtor is a Michigan limited liability company founded December 18, 2018, as "Burman's Tree Services, LLC" Debtor's business address in Chelsea, Michigan, and its principle place of business is in Grass Lake, Michigan, and is a company operating its business as a debtor in possession.

7. Cash is generated from services provided by Burman's Tree Services, LLC (Burman's) to its clients in the form of tree trimming, removal, and grubbing (stump removal).

8. Debtor has not used cash collateral and maintains all collected sales in the Debtor in Possession account.

9. Burman's is subject to several security agreements in which its cash proceeds are cash collateral as defined by the Bankruptcy Code.

10. Pursuant to a loan and security agreement dated December 14, 2024 and a UCC lien filed by The Farmer's & Merchants State Bank claims a lien "in the Collateral, including all cash and non-cash proceeds of the same." Exhibit 4, Appx. 042, 043. The Farmer's & Merchants State Bank is owed approximately $157,048.48 as of the Petition date pursuant to a revolving note and term note, both of which are subject to the security agreement and lien. The Collateral, including receivables and cash, totals $3,324,014.69 as of the Petition date (see Schedule A B, and the Exhibit 3, Appraisal, Appx. 011-022). Other secured creditors have priority in certain equipment as PMSI creditors in the aggregate

amount of $1,150,891.73 (see Schedule D), leaving equity in Burman's equipment, cash and receivables of approximately $2,173,122.96, and an equity buffer even after The Farmer's & Merchants State Bank's lien in the amount of $2,016,074.48.

11. Pursuant to a loan and security agreement dated May 16, 2024 and a UCC lien filed by Priority Capital / Marlin Leasing Company claims a lien in the collateral and "you grant us a first priority, purchase money security interest in the Products and their proceeds." (Exhibit 5, Appx. 052). The subject collateral is one 2012 Freightliner Truck 2107, and the proceeds of the same, including cash collateral as defined by the Bankruptcy Code. According to the Appraisal (Exhibit 3, Appx.014 ), the 2012 Freightliner Truck 2107 has a fair market value of $64,000, and is owed $64,387.68 (See Sch. D). As of the Petition date, there is not an equity cushion in the equipment itself, but there is an equity cushion in proceeds, with Burman having receivables in the amount of $463,895, leaving a significant equity cushion available to Priority Capital / Marlin Leasing Company.

12. Pursuant to a loan and security agreement dated October 16, 2023 and a UCC lien filed by AP Equipment Financing / Allegiant Partners Incorporated claims a lien in the collateral and "proceeds." (Exhibit 6, Appx. 054) The subject collateral is one 2023 CMC 100HD Spider Lift, and the proceeds of the same,

including cash collateral as defined by the Bankruptcy Code. According to the Appraisal (Exhibit 3, Appx. 013), 2023 CMC 100HD has a fair market value of $190,000, and AP Equipment Financing / Allegiant Partners Incorporated is owed $169,760.24 (See Sch. D). As of the Petition date, there is an equity cushion of $20,239.76, leaving a significant equity cushion available to AP Equipment Financing / Allegiant Partners Incorporated in the specified collateral.

13. Pursuant to a loan and security agreement dated October 16, 2023 and a UCC lien filed by AP Equipment Financing / Allegiant Partners Incorporated claims a lien in the collateral and "proceeds." (Exhibit 7, Appx. 061) The subject collateral is one 2022 Bandit 20XPT, and the proceeds of the same, including cash collateral as defined by the Bankruptcy Code. According to the Appraisal (Exhibit 3, Appx.011), 2022 Bandit 20XPT has a fair market value of $225,000, and AP Equipment Financing / Allegiant Partners Incorporated is owed $190,851.18 (See Sch. D). As of the Petition date, there is an equity cushion of $34,148.82, leaving a significant equity cushion available to AP Equipment Financing / Allegiant Partners Incorporated in the specified collateral.

14. Pursuant to a loan and security agreement dated February 27, 2024 and a UCC lien filed by John Deere Financial claims a lien in the collateral and "proceeds

thereof." (Exhibit 8, Appx. 070)  The subject collateral is one 333G Compact Tractor, and the proceeds of the same, including cash collateral as defined by the Bankruptcy Code.  According to the Appraisal (Exhibit 3, Appx. 015), 333G Compact Tractor has a fair market value of $143,000, and John Deere Financial is owed $112,328.14 (See Sch. D).  As of the Petition date, there is an equity cushion of $30,671.86, leaving a significant equity cushion available to John Deere Financial in the specified collateral.

15.     Pursuant to a loan and security agreement dated October 21, 2024 and a UCC lien filed by John Deere Financial claims a lien in the collateral and "proceeds thereof." (Exhibit 9, Appx. 076)  The subject collateral is one 4066R Tractor & 440R Loader, and the proceeds of the same, including cash collateral as defined by the Bankruptcy Code.  According to the Appraisal (Exhibit 3, Appx. 016), 4066R Tractor & 440R Loader has a fair market value of $53,000, and John Deere Financial is owed $19,064.44 (See Sch. D, Appx. XXX).  As of the Petition date, there is an equity cushion of $33,935.56, leaving a significant equity cushion available to John Deere Financial in the specified collateral.

16.     Pursuant to a loan and security agreement dated May 26, 2023 and a UCC lien filed by Financial Pacific Leasing, Inc. claims a lien in the collateral and "all income and proceeds." (Exhibit 10, Appx. 082)  The subject collateral is one 2023 Bandit 2650SP Stump Grinder, and the proceeds of the same, including

cash collateral as defined by the Bankruptcy Code. According to the Appraisal (Exhibit 3, Appx. 011), 2023 Bandit 2650SP Stump Grinder has a fair market value of $70,000, and Financial Pacific Leasing, Inc. is owed $51,521.11 (See Sch. D). As of the Petition date, there is an equity cushion of $18,478.89, leaving a significant equity cushion available to Financial Pacific Leasing, Inc. in the specified collateral.

17. Pursuant to a loan and security agreement dated July 23, 2021and a UCC lien filed by Financial Pacific Leasing, Inc. claims a lien in the collateral and "all income and proceeds." (Exhibit 11, Appx. 086) The subject collateral is one 2021 Bandit Chipper, and the proceeds of the same, including cash collateral as defined by the Bankruptcy Code. According to the Appraisal (Exhibit 3, Appx. ) 2021 Bandit Chipper has a fair market value of $72,000, and Financial Pacific Leasing, Inc. is owed $13,281.03 (See Sch. D, Appx. XXX). As of the Petition date, there is an equity cushion of $58,719, leaving a significant equity cushion available to Financial Pacific Leasing, Inc. in the specified collateral.

18. Pursuant to a loan and security agreement dated April 20, 2023and a UCC lien filed by Financial Pacific Leasing, Inc. claims a lien in the collateral and "all income and proceeds." (Exhibit 12, Appx. 086) The subject collateral is one 2022 Bandit 20XPT, and the proceeds of the same, including cash collateral as defined by the Bankruptcy Code. According to the Appraisal (Exhibit 3, Appx.

011) one 2022 Bandit 20XPT has a fair market value of $56,000, and Financial Pacific Leasing, Inc. is owed $9,305.64 (See Sch. D). As of the Petition date, there is an equity cushion of $46,694.36, leaving a significant equity cushion available to Financial Pacific Leasing, Inc. in the specified collateral.

19.    Pursuant to a loan and security agreement dated October 24, 2023 and a UCC lien filed by Volvo Financial Services claims a lien in the collateral and "proceeds, income, earnings." (Exhibit 13, Appx. 094) The subject collateral is one 2022 Sennebogen, and the proceeds of the same, including cash collateral as defined by the Bankruptcy Code. According to the Appraisal (Exhibit 3, Appx.018) 2022 Sennebogen has a fair market value of $485,000, and Volvo Financial Services is owed $401,976 (See Sch. D). As of the Petition date, there is an equity cushion of $83,024, leaving a significant equity cushion available to Volvo Financial Services in the specified collateral.

20.    Pursuant to a loan and security agreement dated June 13, 2025 and a UCC lien filed by Priority Capital Partners, Inc. claims a lien in the collateral and "proceeds." (Exhibit 14, Appx. 095) The subject collateral is one 2023 Sennebogen, and the proceeds of the same, including cash collateral as defined by the Bankruptcy Code. The loan and equipment having been recently acquired, the collateral is unlikely to have significantly depreciated. The purchase of the 2023 Sennebogen was $376,830,and likely has a value of

approximately $525,00, and Priority Capital Partners, Inc. is owed $341,738.48 as of Petition date. As of the Petition date, there is an equity cushion of $183,261.52, leaving a significant equity cushion available to Priority Capital Partners, Inc. in the specified collateral.

21. Pursuant to a loan and security agreement dated August 8, 2025 and a UCC lien filed by ODK Capital, LLC claims a lien "receivables and accounts." Exhibit 15, Appx. 104. ODK Capital, LLC is owed approximately $139,292.16 as of the Petition date pursuant to a revolving note and term note, both of which are subject to the security agreement and lien. The Collateral, consisting of receivables and cash accounts, totals $493,314.69 as of the Petition date (see Schedule A B). Other creditors, including Farmer's & Merchants State Bank is owed approximately $157,048.48. With the debt to ODK Capital, LLC of approximately $139,292.16, and equity cushion exists in the amount of $196,974.05.

22. The adequate protection to Burman's creditors lay the value and equity cushion of the equipment, vehicles, accounts receivable and cash accounts in the amount of $3,324014.69. Debtor proposes to provide adequate protection to each of its creditors by continued liens on each creditor's respective equipment, and receivables, and accounts of Debtor, and also in paying each creditor monthly payments equal to the principle owed if paid over the course of 60

months at prime rate of 5.75%, plus 1% (6.75%) rate until such time as the

Debtor may confirm a plan of reorganization under the Bankruptcy Code.

| CREDITOR | OWED | COLLATERAL FMV | PAYMENT | COLLATERAL DESCRIPTION |
|---|---|---|---|---|
| Farmer's & Merchants State Bank | 157,048.48 | | 3091.26 | everything |
| Priority Capital / Marlin Leasing Company | 64387.68 | 64,000 | 1267.37 | 2012 Freightliner Truck 2107 |
| AP Equipment Financing / Allegiant Partners | 169760.24 | 190000 | 3341.47 | 2023 CMC 100HD |
| John Deere Financial | 112328.14 | 143000 | 2211.01 | 333G Compact Tractor |
| John Deere Financial | 19064.44 | 53000 | 375.25 | 4066R Tractor & 440R |
| Financial Pacific Leasing, Inc. | 51521.11 | 70000 | 1014.11 | 2023 Bandit 2650SP Stump Grinder |
| Financial Pacific Leasing, Inc. | 1321.03 | 61000 | 261.42 | 2021 Bandit Chipper |
| Financial Pacific Leasing, Inc. | 9305.64 | 56000 | 183.17 | 2022 Bandit 20XPT |
| Volvo Financial Services | 401976 | 485000 | 7912.28 | 2022 Sennebogen |
| Priority Capital Partners, Inc. | 341738.48 | 525000 | 6726.6 | 2023 |
| ODK Capital, LLC | 139292.16 | | 2741.75 | receivables & accounts |
| | $1,467,743.4 | | $29,125.69 | |

23. For the Debtor to continue operating business in a normal and uninterrupted manner, the Debtor must be able to use cash and account to pay for fuel, parts, maintenance, rents, employee wages, withholding and benefits, utilities for heat, light and equipment operation, trash removal, building and equipment maintenance, fuel, and insurance, to include health and workers' compensation insurance. To continue in its business, the Debtor must be permitted to use the cash proceeds of the Debtor's accounts, which are subject to the secured creditor's security interests. The affidavit of the Debtor's Manager, Adam Burman, is filed contemporaneously with this motion (Appx. 106-110).

24. The Debtor anticipates that it may need as much as $87,450 per month, not

including adequate protection payments of $29,125.69, of the creditor's cash collateral to operate its business. Debtor's 15 week projection is attached hereto as Exhibit 16, Appx. 006-0010 in support of first day motions. All cash collateral will be used in accordance with the Debtor's 15 week projections. Burman's 15 week projections are mininimum cash reciepts, and maximium expenses. Burman's notes that its 2025 gross income was $3,506,576, and its 2024 gross income was $2,706,443, for an average monthly gross income in 2025 of $292,214.67. Burman's business has not changed in 2026 and Burman's will have more than adequate gross income to support adequate protection payments of $29,125.69.

25. Pursuant to 11 U.S.C. §363(a) "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property.

26. Pursuant to 11 U.S.C. §522, (b)(1) "if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, or profits of such property, then such security interest extends to such

proceeds, products, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise."

27. In each of the secured creditors discussed in this motion, the creditors have a secured interest in proceeds of the collateral and therefore cash collateral as defined by Sec. 363(a).

28. Pursuant to 11 U.S.C. 363(c)(2) the Debtor may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless-

(A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

29. Burman's secured creditors are entitled to adequate protection under 11 U.S.C. §361. When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by- (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property; (2) providing to such entity an additional or

replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

30. A secured creditor with an interest in cash collateral is entitled to adequate protection to the extent of the anticipated or actual decrease in the value of the collateral during the course of the bankruptcy case. See *In re First S. Sav. Ass'n*, 820 F.2d 700, 710 (5th Cir. 1987). Adequate protection is not to "substantially exceed that to which the secured creditor is entitled." *Travelers Ins. Co. v. Am. Agcredit Corp. (In re Blehm Land & Cattle Co.)*, 859 F.2d 137 (10th Cir. 1988). "The whole purpose in providing adequate protection for a creditor is to insure that the creditor receives the value for which the creditor bargained prebankruptcy." *MBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396 (10th Cir. 1987). *In re TeVoortwis Dairy, LLC*, 605 B.R. 833, 840 (Bankr. E.D. Mich. 2019).

31. Adequate protection under Section 361 is determined by consideration of: "(1) the value of the interest; (2) the risk that the value of the encumbrance will decline; and (3) whether the debtor's adequate protection proposal protects

value against such risks." *Id.* 840

32.  Burman's offers adequate protection in three forms.  First, the grant of each Creditor a replacement lien in the value of each creditor's interest in collateral. Second, periodic cash payments to each secured creditor in an amount determined to pay the claim in full if paid over a period of 60 months.[1] Third, Burman's equipment and recievables offer an equity cushion to the creditors, with nearly every piece of equipment having a fair market value which exceeds or greatly exceeds the amount owed in any single piece of equipment.

33.  Debtor is unable to obtain (1) adequate unsecured credit allowable under §§ 503(b)(1) of the Code as an ordinary administrative expense, (2) unsecured credit allowable under § 364(a) or (b) of the Code, or (3) secured credit under § 364(c)(1) of the Code from any source sufficient to enable Debtor to continue its business operations. Debtor is also unable to obtain financing without (1) granting Lender's claims priority over administrative expenses of the kind specified in §§ 503(b) and 507(b) of the Code in accordance with § 364(c)(1) of the Code; (2) securing the post-petition Indebtedness with liens on all Debtor's post petition assets in accordance with § 364(c)(2) of the Code; and (3) securing the Post-petition Indebtedness with junior liens on Debtor's Pre-

---

[1]. Burman's notes that all creditors are fully secured, and Burman's anticipate proposing a plan of reorganization that pays every secured and unsecured lender in full over a 60 month plan.

petition assets in accordance with § 364(c)(3) of the code.

Wherefore, Debtor requests that after such notice and hearing as this Court deems appropriate, this Court enter an interim order allowing Debtor to use cash collateral and for adequate protection, and that the Court schedule a hearing and enter an order pursuant to 11 U.S.C. § 363(c)(2) permitting the Debtor to use cash collateral, and for other relief as is just and appropriate.

February 6, 2026 /s/ Donald C. Darnell

Don Darnell P55268
8005 Main St., Ste. 5
Dexter, Michigan 48130
734-424-5200
dondarnell@darnell-law.com