UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

*In Re:*                                           Case No. 26-41101
Burman's Tree Services, LLC,                        Honorable Lisa S. Gretchko
                                                    Chapter 11, Subchapter V

                            Debtor.
_____/

## CORRECTED PLAN OF REORGANIZATION
### May 4, 2026

Donald C. Darnell P55268
8005 Main St., Ste. 5
Dexter, Michigan 48130
734-424-5200
dondarnell@darnell-law.com

    This Corrected Plan of Reorganization is filed to correct the case number as incorrectly set forth on the Plan of Reorganization when filed at ECF No. 89.

**Introduction.**

    The Debtor, Burman's Tree Services hereby proposes the following Plan of Reorganization pursuant to Chapter 11 of Title 11, Subchapter V of the United States Code. Debtor notes that no party has requested that Burman's Tree Services, LLC include any specific information in the disclosure and plan, and as such, said disclosure and plan are made pursuant to the guidelines of this Court, the Bankruptcy Rules, the United States Bankruptcy Code, and the Local Rules for the Eastern District of Michigan. The Subchapter V Trustee Deborah Fish has provided information, content and edits to this version of the plan of reorganization.

## The Plan of Reorganization

This Plan of Reorganization provides for the continued operation of Burman's Tree Services, LLC under the existing management. The Debtor shall make monthly payments of approximately $49,157.07 for a period of sixty (60) months, for a total plan funding of approximately $2,949,424.20. Payments shall be funded from the Debtor's ongoing business operations, including revenues generated from municipal, commercial, and residential contracts. The Debtor's projected net operating income exceeds the required Plan payments and provides a reasonable cushion for contingencies, demonstrating feasibility under 11 U.S.C. § 1129(a)(11). Burman's Tree Services, LLC has stabilized its operating expenses and continues to work toward management of the Company to allow for adequate cash-flow to make monies available to support this Plan of Reorganization. Administrative expense claims shall be paid upon allowance and approval by the Court. Priority tax claims shall be paid over time in accordance with 11 U.S.C. §1129(a)(9)(C). Unsecured and trade creditors shall be paid as set forth in their respective classes under this Plan. Funds for the payment of these claims will come from the future operations of the Debtor's business and from Debtor's cash and accounts. The Plan and funds will be administered by the Debtor's principal, Adam Burman and CFO, Holly Neifert. The payments will be paid in accordance with their class, as set forth herein, and then, within the class, paid in accordance with the applicable priority, as determined by this

Plan.

**Summary of Debtor's Plan**.

This Plan of Reorganization provides for the continued operation of Burman's Tree Services, LLC under the existing management and ownership. Burman's Tree Services, LLC proposes to make monthly payments of $49,157.07 for the maximum period of sixty (60) months to fund the Plan of Reorganization for a total plan payout of $2,949,424.20.  Under the Plan, administrative claims will be paid in full on upon application and approval by the Bankruptcy Court.  Meged Funding Group, LLC will be paid the agreed amount of $50,000 on the Effective Date.  Federal and State Tax priority claims will be paid in full over the term of the 60 month Plan. The secured claims of Farmer's & Merchant Bank will be paid in full over the term of the Plan. The claims of secured creditors will be paid in full over the term of the Plan. Unsecured creditors and under-secured creditors will be paid in full over the term of the 60 month Plan. Trade Creditors shall be paid in full on or shortly after the Effective Date, in the ordinary course of the Debtor's operations and consistent with available cash flow. Each class will receive no less than their amount due under a Chapter 7 liquidation..  Funds for the payment of the Plan payments will come from the future operation of the Debtor's business. The funds will be administered by the Debtor.

The payments will be paid in accordance with their class, as set forth herein, and then, within the class, paid in accordance with the applicable priority, as

determined by this Plan.

This Plan classifies claims in accordance with 11 U.S.C. §1122(a), which permits placement of claims in the same class only if they are "substantially similar," while also allowing separate classification where supported by legitimate business or legal justification. Here, secured creditors are separately classified by collateral and loan structure because each claim is secured by distinct equipment or assets and therefore possesses different rights and risk profiles under 11 U.S.C. §506. MCA creditors, including Rowan Advance Group, LLC and CashFund, are separately classified from traditional secured and unsecured creditors because their claims arise from disputed financial arrangements that are properly recharacterized as loans and subject to unique defenses, including usury and unenforceability under applicable nonbankruptcy law in different States, including New York and Utah; thus, they are not substantially similar to trade or general unsecured claims, nor similar to each other. General unsecured creditors are classified separately from trade creditors because trade creditors, who provided ongoing goods and services essential to the Debtor's operations, are afforded different treatment to preserve critical vendor relationships and ensure feasibility of the Plan. This Plan's classification scheme therefore reflects both the legal nature of the claims and the practical necessities of reorganization, and Sections 1122 and 1123(a)(1) of the Bankruptcy Code.

Pursuant to 11 U.S.C. § 506(a), each secured claim is allowed as a secured claim only to the extent of the value of the creditor's interest in the collateral. Any

portion of such claim that exceeds that value shall be treated as an unsecured deficiency claim and classified with general unsecured claims under the Plan.

In determining the value of collateral under 11 U.S.C. § 506(a) as stated in each Class, the Debtor has adopted the collateral values reflected in filed proofs of claim where applicable. In the absence of a filed proof of claim, the Debtor has relied upon the January 2025 appraisal, which is attached hereto, reduced to ninety percent (90%) of appraised value to account for depreciation and wear and tear.

Except as otherwise provided herein, each allowed secured claim shall bear interest at the contract rate set forth in the applicable agreement. MCA creditors and unsecured claims are excluded and treated as provided elsewhere in the Plan.

In the event any holder of a claim arising from a purported merchant cash advance transaction objects to confirmation of this Plan, the Debtor expressly reserves all rights to contest such claim, including but not limited to recharacterization of the transaction as a loan, and to assert any and all defenses under applicable nonbankruptcy law, including usury, unenforceability, and equitable doctrines. Nothing in this Plan or the confirmation process shall constitute a waiver of such rights, and the Debtor may seek adjudication of such issues by objection, adversary proceeding, or otherwise, as appropriate.

Except as otherwise provided herein, all payments under the Plan shall commence on the first payment date following the Effective Date.

# Chart of Summary of Class Payments

| Class | Creditor | Claim $ | Property | Contract Interest | Secured | unsecured | mo. payment |
|---|---|---|---|---|---|---|---|
| 1 | Farmer's & Merchants State Bank | $172,354.92 | All Assets | 9.25 | $172,354.92 | | $3,598.75 |
| 2 | Ally Bank | $75,532.33 | 2023 Chevy Truck | 14.14 | $51,175.00 | $24,357.33 | $1,194.47 |
| 3 | Ally Bank | $80,058.79 | 2023 Chevy Truck | 14.14 | $51,175.00 | $28,883.79 | $1,194.47 |
| 4 | Marlin Leasing Corp. | $62,231.80 | 2012 Freightliner | 13.25 | $30,000.00 | $32,231.80 | $684.44 |
| 5 | Targeted Lending Co. | $58,474.30 | 2010 JD 624J | 18 | $58,474.30 | $0.00 | $1,484.31 |
| 6 | AP Equipment Lending | $147,703.35 | 2023 CMC 100 HD | 8.5 | $125,000.00 | $22,703.35 | $2,564.57 |
| 7 | AP Equipment Lending | $163,744.27 | 2022 Bandit20XPT | 9.94 | $135,000.00 | $28,744.27 | $2,864.27 |
| 8 | BMO Bank N.A. | $23,630.74 | Ditch Witch SK900 | 0 | $23,630.74 | $0.00 | $393.85 |
| 9 | BMO Bank N.A. | $26,824.60 | Ditch Witch SK900 | 0 | $26,824.60 | $0.00 | $447.08 |
| 10 | Western Equipment Finance | $115,919.14 | 2012 Kenworth with Palfinger Boom Crane | 1.5 | $115,919.14 | $0.00 | $2,006.55 |
| 11 | Western Equipment Finance | $27,650.24 | 2014 Freightliner M2 Chip Truck | 8.99 | $27,650.24 | $0.00 | $573.84 |
| 12 | Western Equipment Finance | $89,759.80 | 2014 Freightliner M2 & 2024 Witzo Trailer | 9.13 | $89,759.80 | $0.00 | $1,968.93 |
| 13 | John Deere Financial | $112,328.14 | JD 333G | 3.25 | $112,328.14 | $0.00 | $2,030.89 |
| 14 | John Deere Financial | $19,064.44 | JD 4066R | 0 | $19,064.44 | $0.00 | $317.74 |
| 15 | Volvo Financial Services | $353192.88 | 2022 Sennebogen | 9.5 | $401,976.75 | $0.00 | $7,495.62 |
| 16 | First Commonwealth Financial Services | $341,738.48 | 2023 Sennebogen | 12.28 | $341,738.48 | $0.00 | $7,650.23 |
| 17 | Financial Pacific Leasing, Inc. | $14,180.97 | 2021 Bandit Chipper | 1.7 | $14,180.97 | $0.00 | $246.70 |
| 18 | Financial Pacific Leasing, Inc. | $9,305.64 | 2023 Bandit Chipper | 7.95 | $9,305.64 | $0.00 | $188.46 |
| 19 | Financial Pacific Leasing, Inc. | $51,521.11 | 2023 Bandit Stump Grinder | 7.95 | $48,000.00 | $3,521.11 | |
| 20 | Meged Funding Group | $146,902.00 | MCA | | | $0.00 | $0.00 |
| 21 | Rowan Advance Group, LLC | $180,666.00 | MCA | | | | |
| 22 | CFS CAP, LLC Cashfund | $343,269.00 | MCA | | | $64,132.00 | $1,086.68 |
| 23 | Unsecured Creditors | $222,120.92 | | 5.75 | | | $4,268.45 |
| 24 | Trade Creditors | $31,418.25 | | | | | |

| Group 1 Admin Expense | 43000 est | | |
|---|---|---|---|
| Group 2 IRS | $291,996.52 | 7 | $5,781.28 |
| Group 3 State of Michigan | $50,147.13 | 12 | $1,115.49 |

totals

| | | | |
|---|---|---|---|
| $3,254,735.76 | | $1,853,558.16 $204,573.65 | $49,157.07 |

## Class 1 – Farmer's & Merchants State Bank

Secured by Burman's Tree Services, LLC assets in the amount of $172,354.92.

Farmers & Merchants State Bank has filed a Proof of Claim at Claim 4, on March 3, 2026. Farmers & Merchants State Bank is owed $172,354.92 in principal, plus interest. Beginning on the Effective Date, Farmers & Merchants State Bank will receive monthly installment payments of principal and interest calculated at a variable interest rate of 2.5% plus the prime interest rate as published by the Wall Street Journal (WSJ) (the "Effective Rate") amortized on a 5-year schedule. The current prime interest rate is 6.75% and therefore the initial Effective Rate is 9.25%. The initial monthly payment amount calculated using the Effective Rate is $3,598.75. In the event of change in the Prime Rate, the Effective Rate shall be changed immediately to 2.5 percentage points in excess of the new Prime Rate. All liens, claims, interest and encumbrances of Farmers & Merchants State Bank are preserved and continued post-confirmation, notwithstanding 11 U.S.C. §1141(c). In addition, all of the underlying Loan Documents between Farmers & Merchants State Bank and the Debtor must remain operative and enforceable post-confirmation, except as modified

by the Plan. Guarantors remain obligated as set forth in the Loan Documents until such time as all of the indebtedness owed to Farmers & Merchants State Bank is paid in full. The Debt to Farmers & Merchants State Bank is not discharged until such time as the Debtor fulfills its obligations under the Plan. Farmers & Merchants State Bank is secured by a first priority blanket lien on all assets of Burman's Tree Services, LLC.

Should the Debtor default in any of the terms of this plan as they relate to Farmers & Merchants State Bank, said creditor shall have the right to entry of an order terminating the automatic stay without notice or hearing upon the filing of the affidavit of default following written notice to the Debtor and counsel and a 30 day right to cure limited to two rights to cure during the plan term.

Farmers & Merchants State Bank is impaired and is entitled to vote.

**Class 2 - Ally Bank**

Secured in one 2023 Chevrolet Truck 0109 in the amount of $51,175.

Ally Bank has filed a claim in the amount of $75,532.33, stating that the value of the property is $51,175, and the unsecured value being$24,357.33.  Claim 1

Paid $1,194.47 beginning on the fifth day of the month following the Effective Date of the plan until the 60th month of the plan, accruing interest at 14.14%, until fully paid.  Secured by a first priority lien on Debtor's 2023 Chevrolet Truck 0109, which has a value of $51,175 4.

Ally Bank is impaired and entitled to vote.

**Class 3 - Ally Bank**

Secured in one 2023 Chevrolet Truck 9243 in the amount of $51,175

Ally Bank has filed a claim in the amount of $80,058.79, stating that the value of the property is $51,175, and the unsecured value being$28,883.79.  Claim 2

Paid $1,194.47 beginning on the fifth day of the month following the Effective Date of the plan until the 60th month of the plan, accruing interest at 14.14%, until fully paid.  Secured by a first priority lien on Debtor's 2023 Chevrolet Truck 9143, which has a value of $51,175.

Ally Bank is impaired and entitled to vote.

**Class 4 - Marlin Leasing Corporation d.b.a. PEAC SOLUTIONS**

Secured in (1) 2012 Freightliner Truck 2107 in the amount of $30,000. Marline Leasing has filed a claim in the amount of $62,231.80, stating that the value of the property is $30,000, and the unsecured value being$32,231.80.  Claim 3

Paid $684.44 beginning on the fifth day of the month following the Effective Date of the plan until the 60th month of the plan, accruing interest at 13.25%, until fully paid.  Secured by a first priority lien on Debtor's 2012 Freightliner Truck 2107, which has a value of $30,000.

Marlin Leasing Corporation d.b.a. PEAC SOLUTIONS is impaired and entitled to vote.

**Class 5 - Targeted Lending Co. LLC**

Secured in (1) 2010 John Deere 624J Loader 3532 in the amount of $58,474.31.

Targeted Lending has filed a claim in the amount of $58,474.31, stating that the value of the property is $58,474.3, and the unsecured value being zero. Claim 6. The Debtor has adopted the value asserted in Targeted Lending's proof of claim as consistent with 11 U.S.C. § 506(a).

Paid $1,484.31 beginning on the fifth day of the month following the Effective Date of the plan until the 60th month of the plan, accruing interest at 18%, until fully paid. Secured by a first priority lien on Debtor's 2010 John Deere 624J Loader 3532, which has a value of $58,474.31.

Targeted Lending Co. LLC is impaired and entitled to vote.

**Class 6 - AP Equipment Financing / Allegiant Partners Incorp.**

Secured in (1) 2023 CMC 100HD+ in the amount of $125,000.

AP Equipment Financing has filed a claim in the amount of $147,703.35, stating that the value of the property is $125,000, and the unsecured value being $22,703.35. Claim 7

Paid $2,564.57 beginning on the fifth day of the month following the Effective Date of the plan until the 60th month of the plan, accruing interest at 8.5%, until fully paid. Secured by a first priority lien on Debtor's 2023 CMC 100HD+ , which has a value of $125,000.

AP Equipment Financing / Allegiant Partners Incorp. is impaired and entitled

to vote.

**Class 7 - AP Equipment Financing / Allegiant Partners Incorp.**

Secured in (1) 2022 Bandit 20XPT in the amount of $135,000.

AP Equipment Financing has filed a claim in the amount of $163,744.27, stating that the value of the property is $135,000, and the unsecured value being $28,744.27. Claim 8

Paid $2,864.37 beginning on the fifth day of the month following the Effective Date of the plan until the 60th month of the plan, accruing interest at 9.94%, until fully paid. Secured by a first priority lien on Debtor's 2022 Bandit 20XPT, which has a value of $135,000.

AP Equipment Financing / Allegiant Partners Incorp. is impaired and entitled to vote.

**Class 8 - BMO Bank N.A.**

Secured in (1) Ditch Witch SK900 Mini Skid Steer in the amount of $23,630.74.

BMO Bank N.A. has filed a claim in the amount of $23,630.74, stating that the value of the property is $23,630.74, and the unsecured value being zero. Claim 9

Paid $393.85 beginning on the fifth day of the month following the Effective Date of the plan until the 60th month of the plan, accruing interest at 0.00%, until fully paid. Secured by a first priority lien on Debtor's Ditch Witch SK900 Mini Skid Steer, which has a value of $23,630.74.

BMO Bank N.A. is impaired and entitled to vote.

**Class 9 - BMO Bank N.A.**

Secured in (1) Ditch Witch SK900 Mini Skid Steer in the amount of $26,824.64.

BMO Bank N.A. has filed a claim in the amount of $26,824.6, stating that the value of the property is $26,824.6, and the unsecured value being zero.  Claim 10

Paid $447.08 beginning on the fifth day of the month following the Effective Date of the plan until the 60th month of the plan, accruing interest at 0.00%, until fully paid.  Secured by a first priority lien on Debtor's Ditch Witch SK900 Mini Skid Steer, which has a value of $26,824.64.

BMO Bank N.A. is impaired and entitled to vote.

**Class 10 - Western Equipment Finance.**

Secured in (1) 2012 Kenworth T800 Truck, with Palfinger M-13 Boom Crane, Mecnil SG 289 Grapple Saw, Titan Waste Grapple Attachment, and Palfinger Hood Weather Cover in the amount of $115,919.14.

Paid $2,006.55 beginning on the fifth day of the month following the Effective Date of the plan until the 60th month of the plan, accruing interest at 1.5%, until fully paid.  Secured by a first priority lien on Debtor's 2012 Kenworth T800 Truck, with Palfinger M-13 Boom Crane, Mecnil SG 289 Grapple Saw, Titan Waste Grapple Attachment, and Palfinger Hood Weather Cover, which has a FMV of $193,500.

Western Equipment Finance is impaired and entitled to vote.

**Class 11 - Western Equipment Finance**

Secured in (1) 2014 Freightliner M2 Chip Truck in the amount of $27,650.24.

Paid $573.84 beginning on the fifth day of the month following the Effective Date of the plan until the 60th month of the plan, accruing interest at 8.99%, until fully paid.  Secured by a first priority lien on Debtor's 2014 Freightliner M2 Chip Truck, which has a value of $46,800.

Western Equipment Finance is impaired and entitled to vote.

**Class 12 - Western Equipment Finance**

Secured in (1) 2014 Freightliner M2 & 2024 Witzo Trailer in the amount of $89,759.80.

Paid $1,868.93 beginning on the fifth day of the month following the Effective Date of the plan until the 60th month of the plan, accruing interest at 9.13%, until fully paid.  Secured by a first priority lien on Debtor's 2014 Freightliner M2 & 2024 Witzo Trailer, which has a value of $108,900. ($46,800 Freightliner / $62,100 Witzo Trailer.)

Western Equipment Finance is impaired and entitled to vote.

**Class 13 - John Deere Financial**

Secured by (1) 333G Compact Tractor in the amount of $112,328.14.

Paid $2,030.89 beginning on the fifth day of the month following the Effective Date of the plan until the 60th month of the plan, accruing interest at 3.25%, until fully paid.  Secured by a first priority lien on Debtor's 333G Compact Tractor , which

has a value of $128,700.

John Deere Financial is impaired and entitled to vote.

**Class 14 - John Deere Financial**

Secured by (1) 4066R Tractor & 440R Loader in the amount of $19,064.44.

Paid $317.74 beginning on the fifth day of the month following the Effective Date of the plan until the 60th month of the plan, accruing interest at 0.00%, until fully paid. Secured by a first priority lien on Debtor's 4066R Tractor & 440R Loader, which has a value of $47,700.

John Deere Financial is impaired and entitled to vote.

**Class 15 - Volvo Financial Services**

Secured by (1) 2022 Sennebogen Tree Handler in the amount of $353,192.88

Paid $7,495.62 beginning on the fifth day of the month following the Effective Date of the plan until the 60th month of the plan, accruing interest at 9.5%, until fully paid. Secured by a first priority lien on Debtor's 2022 Sennebogen, which has a value of $401,976.75.

Volvo Financial Services is impaired and entitled to vote.

**Class 16 - First Commonwealth Financial Services**

Secured by (1) 2023 Sennebogen 718R Tree Handler in the amount of $341,738.48. Debtor notes that First Commonwealth has filed a Proof of Claim No. 16 for $464,962.64. The contract amount dated 6/12/2025 is in the amount of $376,830, less than the amount of Claim 16. Debtor assumes and concludes that

Claim 16 total includes both principal and interest payments, and Debtor calculates that the principal amount owed to First Commonwealth Financial Services on the Petition Date was $341,738.48 as set forth in Debtor's books and records.

Paid $7,650.23 beginning on the fifth day of the month following the Effective Date of the plan until the 60th month of the plan, accruing interest at 12.28%, until fully paid. Secured by a first priority lien on Debtor's 2023 Sennebogen 718R Tree Handler, which has a value of $525,000.

**Class 17 - Financial Pacific Leasing, Inc.**

Secured in (1) 2021 Bandit Chipper in the amount of $14,180.97.

Financial Pacific Leasing, Inc. has filed a claim in the amount of $14,180.97, stating that the value of the property is $14,180.97, and the unsecured value being zero. Claim 17

Paid $246.70 beginning on the fifth day of the month following the Effective Date of the plan until the 60th month of the plan, accruing interest at 1.7%, until fully paid. Secured by a first priority lien on Debtor's 2021 Bandit Chipper, which has a value of $64,800.

Financial Pacific Leasing, Inc. is impaired and entitled to vote.

**Class 18 - Financial Pacific Leasing, Inc.**

Secured in (1) 2023 Bandit Chipper in the amount of $9,305.64.

Financial Pacific Leasing, Inc. has filed a claim in the amount of $9,305.64., stating that the value of the property is $14,180.97, and the unsecured value being

zero.  Claim 18

Paid $188.46 beginning on the fifth day of the month following the Effective Date of the plan until the 60th month of the plan, accruing interest at 7.95%, until fully paid.  Secured by a first priority lien on Debtor's 2023 Bandit Chipper, which has a value of $50,400.

Financial Pacific Leasing, Inc. is impaired and entitled to vote.

## Class 19 - Financial Pacific Leasing, Inc.

Secured in (1) 2023 Bandit Stump Grinder in the amount of $51,521.11.

Financial Pacific Leasing, Inc. has filed a claim in the amount of $51,521.11., stating that the value of the property is $48,000, and the unsecured value being $3,521.11.  Claim 19

Paid $972.12 beginning on the fifth day of the month following the Effective Date of the plan until the 60th month of the plan, accruing interest at 7.95%, until fully paid.  Secured by a first priority lien on Debtor's 2023 Bandit Chipper, which has a value of $50,400.

Financial Pacific Leasing, Inc. is impaired and entitled to vote.

## Class 20 - Meged Funding Group, LLC

Paid $50,000 on the Effective Date of the Plan.

Meged Funding Group ("Meged") shall hold an Allowed Claim in the amount of $146,902 in this Case (the "Meged Claim"). The Debtor acknowledges and agrees that Meged is not required to file a proof of claim, and the Debtor does not dispute the

Meged Claim.

On the Effective Date of the Plan, the Debtor shall pay Meged $50,000 in full and final satisfaction of the Meged Claim and any and all obligations arising under that certain Purchase Agreement, including, without limitation, any and all claims Meged may have against Adam Burman. Upon Meged's receipt of the $50,000 payment, the Meged Claim shall be deemed satisfied, released, and discharged in full.

Upon consummation of the foregoing payment, any funds being escrowed pursuant to the Interim Order and any subsequent order authorizing the use of cash collateral entered in this Case shall be fully released and may be used by the Debtor in the ordinary course and in accordance with the Plan.

If the Debtor fails to make the $50,000 payment to Meged on the Effective Date, Meged may provide written notice of default to the Debtor and its counsel. The Debtor shall have ten (10) days from receipt of such notice to cure the default. If the Debtor fails to cure the default within the ten (10) day cure period, then the Debtor shall be liable to Meged for the entire $146,902 Allowed Claim; the Allowed Claim shall be paid by the Debtor to Meged in equal monthly installments of $2,500 for fifty-eight (58) months, followed by a final payment of $1,902 in month fifty-nine (59), until paid in full; and Meged shall be entitled to pursue any and all claims it believes it has against Adam Burman, without limitation.

Meged Funding Group, LLC is impaired and entitled to vote.

**Class 21 - Rowan Advance Group, LLC**

Class 21 Rowan Advance Group, LLC consists of a MCA transaction with an initial funding amount of $210,000 on November 25, 2025.

Rowan Advance Group, LLC (Rowan) is a Merchant Cash Advance business based in New Jersey, applying New York law to its contracts. On November 25, 2025, Rowan advanced Burman's Tree Services, LLC $210,000, and required weekly payments of $7,333.34 over a period of 42 weeks, for an annualized effective interest rate of 187%.

The agreement between Rowan and Burman's Tree Services, LLC contains a choice of law provision of the State of New York. The Rowan financial arrangement underlying a claim by Rowan provides for, or charges an effective rate of interest that far exceeds the maximum rate of 25% permitted under New York law. While characterized as a purchase of Burman's Tree Services, LLC's receivables, the transaction bears all the hallmarks of a loan, including: (a) fixed repayment obligation or repayment schedule; (b) finite term for repayment; (c) lack of true risk to Rowan in the event of Burman's Tree Services, LLC's business downturn; (d) contractual provisions that ensure Plaintiff's absolute right to repayment; (e) reconciliation provisions that are illusory, discretionary, or not meaningfully honored in practice; and (f) personal guarantees and enforcement mechanisms inconsistent with a true sale of receivables. While the determination of whether an agreement is a sale or is a loan is typically a factually-intensive one, see *Cap Call, LLC v. Foster (In re Shoot the*

*Moon, LLC*), 635 B.R. 797, 820 (Bankr. D. Mont. 2021), Under New York law, however, the question of whether an agreement constitutes a loan is governed by its substance, not its form. *Fleetwood Servs., LLC v. Richmond Cap. Grp. LLC*, No.22-1885-CV, 2023 WL 3882697 The substance of the Rowan transaction meets all the hallmarks of a loan. When properly characterized as a loan, the amounts required to be paid to Rowan, including all fees, charges, purchased amount differentials, and other sums, constitute <u>interest</u> for purposes of New York Penal Law § 190.40. *Adar Bays, LLC v. GeneSYS ID, Inc*., 37 N.Y.3d 320, 179 N.E.3d 612, 157 N.Y.S.3d 800 (N.Y. 2021), interpreting New York Penal Law § 190.40, found that corporations may assert usury defense to void loan agreements with interest rates exceeding 25% per annum, confirming that usurious loans are unenforceable against corporate borrowers. New York's General Obligations Law § 5-511(1) provides for the voidability of those contracts. Adar Bays, 179 N.E.3d at 621. Construing both statutes, New York's highest court has held that, where a loan is found to be criminally usurious, the proper remedy is to render the agreement void ab initio. *Id.* at 615-20. Accordingly, Class 21 Rowan's claim is void and shall receive no payment under the Plan.

The treatment of this claim reflects the Debtor's good faith determination of the legal and equitable rights of such creditor based upon the substance of the underlying transactions and applicable nonbankruptcy law.

**Class 22 - CFS CAP, LLC d/b/a CashFund**

Cashfund is unsecured.  Paid $64,132.

 $1,086.68 beginning on the fifth day of the month following the Effective Date of the plan until the 60th month of the plan, accruing interest at 0.00%, until fully paid

CashFund filed Proof of Claim No. 5 asserting a claim in the amount of $343,269.00, based on a purported "purchase of future receivables."  On or about January 6, 2026, CashFund entered into a "Purchase and Sale of Future Receivables Agreement" with Debtor, pursuant to which CashFund purported to advance $78,085 in exchange for a "purchased amount" of $350,000.  The agreement further required fixed weekly withdrawals of approximately $6,731, regardless of actual receivables, and imposed additional charges, including NSF fees and default-triggered remedies. The agreement contains a Utah choice-of-law provision.

Although styled as a "purchase of receivables," the Cashfund transaction is, in substance, a loan.  Bankruptcy Courts consistently hold that the determination of whether a transaction constitutes a loan depends on its economic substance rather than its form. *Cap Call, LLC v. Foster* (*In re Shoot the Moon, LLC*), 635 B.R. 797 (Bankr. D. Mont. 2021).  The Cashfund agreement bears all the hallmarks of a loan, including: (a) fixed and finite repayment obligation of $350,000; (b) mandatory weekly payments of $6,731, irrespective of actual receivables; (c) personal guaranty of performance; (d) full control over Debtor's bank account and receivables stream; (e) prohibitions on altering banking arrangements or business operations; and (f) default

26-41101-lsg   Doc 91   Filed 05/07/26   Entered 05/07/26 13:25:39   Page 20 of 50

provisions converting the obligation into an immediate and absolute repayment obligation. Critically, upon any "breach," the agreement provides that the entire remaining balance becomes immediately due, and the "purchased percentage" converts to 100%, eliminating any alleged risk to Cashfund. Such provisions demonstrate that repayment is not contingent on receivables, but is instead absolute, rendering the transaction a disguised loan. Utah does not impose a strict usury cap on commercial loans. However, Utah does not require enforcement of unconscionable, punitive, or non-compensatory contractual provisions. Utah courts recognize that contract terms may be refused enforcement where they are oppressive or unconscionable; and charges that function as penalties rather than compensation are not enforceable. *Resource Management Co. v. Weston Ranch & Livestock Co.*, 706 P.2d 1028 (Utah 1985).

Cashfund advanced Burman's Tree Services, LLC approximately $171,832 in two transactions of $93,747 on August 11, 2025, and $78,085 on January 6, 2026. According to Cashfund's Proof of Claim (after fees); required repayment of $350,000, over the term of 52 weeks of $6,731 per week. For a period of 20 weeks, Burman's Tree Services, LLC paid a weekly payment in the amount of $5,385.00, for a total paid to Cashfund of $107,700. Of the principal funded to Burman's Tree Services, LLC of $171,832, Cashfund remains to be paid $64,132. In full and final satisfaction of its claim, Cashfund shall receive an Allowed Claim equal to the net unpaid principal actually advanced and no interest, fees, default interest, or other charges.

The treatment of this claim reflects the Debtor's good faith determination of the legal and equitable rights of such creditor based upon the substance of the underlying transactions and applicable nonbankruptcy law.

**Class 23 – Unsecured Creditors**

Class 23 consists of the claims of all unsecured creditors, excluding trade creditors, if and when allowed. The holders of allowed Class 23 claims shall receive a 100% distribution on account of their allowed claims, until the 60th month of the plan, accruing interest at 5.75%, until fully paid.

Class 23 General Unsecured Creditors are impaired and entitled to vote.

| | |
|---|---|
| American Express | |
| Claim 11 | $7,404.41 |
| On Deck | $69,646.00 |
| IRS | $4,700.86 |
| AP Equipment Financing | $22,703.35 |
| | |
| Claim 7 | |
| AP Equipment Financing | $28,744.27 |
| | |
| Claim 8 | |
| Western Equipment Finance | |
| | |
| 2012 Kenworth T800 Truck | $32,159.80 |
| Financial Pacific Leasing, Inc. | $3,521.11 |
| | |
| Ally Claim 2 | $24,357.33 |
| Ally Claim 3 | $28,883.79 |
| | $222,120.92 |

**Class 24 - Trade Creditors**

Class 24 Trade Creditors consist of sellers of parts and fuel, including Kelly Fuels and Palfinger, provided to the Debtor pre-petition on an as-needed basis.

Class 24 - Trade Creditors in the total amount of $31,418.25, will be paid full on the Effective Date of the Plan.

Such treatment is necessary to preserve ongoing vendor relationships critical to the Debtor's operations and the feasibility of the Plan.

| | |
|---|---|
| Kelly Fuels | $24,995.23 |
| Palfinger | $6,423.02 |
| | $31,418.25 |

The Debtor seeks confirmation of this Plan under 11 U.S.C. § 1191. To the extent that all impaired classes do not accept the Plan, the Debtor requests confirmation pursuant to 11 U.S.C. § 1191(b), as the Plan does not discriminate unfairly and is fair and equitable with respect to each impaired class.

**Claimants Not Entitled to Vote**

Pursuant to 11 U.S.C. § 1126(f), holders of unimpaired claims are conclusively presumed to accept the Plan and are not entitled to vote. Administrative expense claims and priority tax claims, including those of the Internal Revenue Service and the State of Michigan, are not impaired under the Plan and therefore are not entitled to vote.

**Group 1 – Administrative Expense Claims**

Administrative claims, as may be allowed, by Attorney Donald C. Darnell in the amount of approximately $25,000. The Administrative Claim of Donald C. Darnell shall be fully paid only after Donald C. Darnell has filed a fee application and the Court has approved Donald C. Darnell's fees and expenses. Administrative claims, as may be allowed, by Subchapter V Trustee Deborah Fish in the amount of approximately $18,000. The Administrative Claim of Subchapter V Trustee Deborah Fish shall be fully paid only after Subchapter V Trustee Deborah Fish has filed a fee application and the Court has approved Subchapter V Trustee Deborah Fish's fees and expenses.

**Group 2 – Internal Revenue Service (IRS)**

The Internal Revenue Service holds an allowed priority tax claim pursuant to 11 U.S.C. § 507(a)(8), which shall be paid in deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claim, in accordance with 11 U.S.C. § 1129(a)(9)(C).

The IRS has filed a priority and unsecured claim in the amount of $291,996.52. pursuant to 11 U.S.C. § 507(a)(8). Beginning on Effective Date the IRS will receive monthly installment payments of principal and interest calculated pursuant to 26 U.S.C. §6621 amortized on a 5-year schedule. The current rate of interest is 7%. The initial monthly payment amount calculated using the current rate of interest under IRC §6621 is $5,781.28.

Upon the failure of the Debtor or Reorganized Debtor, as applicable, to make any payments due on a Priority Tax Claim, when Allowed, that is not cured on or within thirty (30) days of the mailing of a written notice of default by the affected Priority Tax Claim Creditor, such Creditor may exercise all rights and remedies available under non-bankruptcy law for the collection of its entire claim and/or seek appropriate relief in this court. To the extent practicable, in the event of a conversion of this Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code, all property of the Debtor, Debtor-In-Possession, or Reorganized Debtor, including all property which will revest in the Reorganized Debtor pursuant to Confirmation of the Plan, and all property acquired by the Reorganized Debtor subsequent to the Plan Confirmation shall be property of the Chapter 7 estate. Notwithstanding any provision in the Plan to the contrary, nothing shall (I) affect the ability of a Priority Tax Claim Creditor to pursue, to the extent allowed by non-bankruptcy law, any non-debtor for any liabilities that may be related to any tax liabilities owed by the Debtor to such Priority Tax Claim Creditor; and (ii) affect the rights to assert setoff or recoupment, and such rights are expressly preserved. The Debtor or Reorganized Debtor shall have the right to challenge any Priority Tax Claim, which challenge may include, but need not be limited to, a challenge to any penalty portion of such Claim, the amount and the value of the property which forms the basis for any assessment of taxes, and the computation of the tax. The right to challenge these Claims shall include, without limitation, an objection to the assessment of the Debtor's real or personal property that

may or may not have been made by the respective taxing authority.

**Group 3 – State of Michigan**

The State of Michigan holds an allowed priority tax claim pursuant to 11 U.S.C. § 507(a)(8), which shall be paid in deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claim, in accordance with 11 U.S.C. § 1129(a)(9)(C).

The Debtor has scheduled a debt to the State of Michigan is entitled to a priority claim of $50,147.13. Allowed claims by the State of Michigan are entitled to priority pursuant to 11 U.S.C. §507(a)(8). Priority claims of the State of Michigan in the amount of $50,147.1, plus statutory interest of 12% annum pursuant to MCL §421.15, shall be paid in shall be paid in equal, monthly cash payments within 60 months of the petition date. Monthly installments of $1,115.49 shall start on the Effective Date. Upon the failure of the Debtor to make any payment due on a priority tax claim that is not cured within thirty days of mailing of a written notice of default by the creditor, such creditor may exercise all rights and remedies available under non-bankruptcy law for the collection of its entire claims and/or seek appropriate relief in this Court.

**1.      Description of the Debtor - Burman's Tree Services, LLC**

a.      Burman's Tree Services, LLC.

The Debtor is a Michigan limited liability company founded December 18, 2018, as "Burman's Tree Services, LLC." Debtor's business address is in Chelsea, Michigan, and its principal place of business is in Grass Lake, Michigan, and is a

company operating its business as a debtor in possession.

b.      The Principal.

Adam Burman is the 100% membership interest holder in the Debtor.  Adam Burman is also the only manager of Burman's Tree Services, LLC and handles most of the administrative duties for the company.  No insider or equity holder shall receive or retain any property under the Plan on account of such interest except as permitted under 11 U.S.C. § 1191.

Adam Burman has been managing the business affairs of the Debtor while it has been operating as a Debtor in Possession in this Chapter 11 proceeding. During this time, Adam Burman has taken salary for his managerial duties and professional services. Adam Burman draws a salary of approximately $100,000 annually. Adam Burman fills many roles in the company, included under such broad definitions as General Manager, Chief Estimator, Process Engineer, and Business Development. Adam Burman receives fringe benefits from the Company in the form of health insurance premium payments.  Adam Burman receives no other compensation or benefits. The Debtor believes such compensation is reasonable and consistent with industry standards for similarly situated businesses.

As of the Effective Date, the Operating Agreement of Burman's Tree Services, LLC. shall be deemed modified and amended to the extent required by 11 U.S.C. § 1123(a)(6), as applied to limited liability companies, and the sole Member of the reorganized Debtor that hold an equity interest issued or outstanding after this

Confirmation Order is entered shall be subject to such Operating Agreement, as amended.

c.       Adam Burman's Legal Relationships with Burman's Tree Services, LLC.

Burman's Tree Services, LLC operations, a Michigan limited liability company which is solely owned by Adam Burman. As set forth above in Class 1 above, Adam Burman is indebted to Farmers & Merchants State Bank in the amount of approximately $172,354.92 and is a co-debtor with Burman's Tree Services, LLC.

The Debtor leases office space in Grass Lake, Michigan from Kathryn Miller on a month-to-month basis and leases an equipment yard and building in Grass Lake, Michigan from Adam Burman, an insider. Both leases are month to month unwritten leases.  The Debtor intends to continue both leasing arrangements in the ordinary course on terms that are fair and reasonable and consistent with market conditions, as such facilities are necessary for ongoing operations and feasibility of the Plan.  The Debtor believes the terms of such leases are comparable to similar arrangements available in the market.

d.       Debtor's Business, Industry Group, and Causes for Filing.

Burman's Tree Services, LLC's business is primarily focused on tree removal and land clearing.  Burman's Tree Services, LLC's clients are typically municipalities and the Michigan Department of Transportation.  Burman's Tree Services, LLC also has a department that provides tree and stump removal to small businesses and

residential clients, and revenue from said services are approximately ten percent of annual revenues.

Debtor's financial difficulties started when two large unrelated projects for Wayne County and the City of Livonia delayed payment to Burman's Tree Services, LLC for more than 90 days, cause an extreme impact to Burman's Tree Services, LLC's cash flow. In December 2024, Burman's Tree Services, LLC applied for SBA funding to assist in managing cash flow, but the application was denied. Burman's Tree Services, LLC was in dire need of operating cash thereafter and turned to MCA creditors to fund operations. Ironically, the MCA repayment terms deprived Burman's Tree Services, LLC of adequate cash required for operations, and Burman's Tree Services, LLC turned to additional MCA lending to fund operations and manage cash flow.

**2.      Post-Petition Events**.

a.      Post-Petition Transfers Outside the Ordinary Course of Business.

None.

b.      Summaries of Cash Collateral and Adequate Protection.

The Debtor has been authorized by this Court to use cash collateral pursuant to interim and extended orders entered in this case, in accordance with a Court-approved budget and subject to a permitted variance. The Debtor's cash collateral consists primarily of receivables and cash proceeds subject to the liens of Farmers & Merchants State Bank, Meged Funding Group, and Rowan Advance Group, LLC. The

Court found such use necessary to avoid immediate and irreparable harm and to permit continued operations, including payment of payroll, taxes, fuel, insurance, and other ordinary course expenses. Adequate protection has been provided through periodic payments, escrow arrangements, replacement liens, and existing equity cushions. The Debtor's continued use of cash collateral has preserved operations and enterprise value pending confirmation.

### 3.    Liquidation Analysis

| Assets and Collateral | Creditor Holding Lien | FMV | FSV | Amount of Secured Claim | Equity |
|---|---|---|---|---|---|
| 2023 Chevrolet 5500 | Ally Bank | $51,175.00 | $35,822.50 | $51,175.00 | 0 |
| 2023 Chevrolet 5500 | Ally Bank | $51,175.00 | $35,822.50 | $51,175.00 | 0 |
| 2012 Freightliner | Marlin Leasing Corp. | $30,000.00 | $21,000.00 | $30,000.00 | 0 |
| 2010 JD 624J | Targeted Lending Co. | $58,474.31 | $40,932.02 | $58,474.30 | 0 |
| 2023 CMC 100 HD | AP Equipment Lending | $125,000.00 | $87,500.00 | $125,000.00 | 0 |
| 2022 Bandit20XPT | AP Equipment Lending | $135,000.00 | $94,500.00 | $135,000.00 | 0 |
| 2023 Ditch Witch SK900 | BMO Bank N.A. | $23,630.74 | $16,541.52 | $23,630.74 | 0 |
| 2023 Ditch Witch SK900 | BMO Bank N.A. | $26,824.64 | $18,777.25 | $26,824.60 | 0 |
| 2012 Kenworth with Palfinger Boom Crane | Western Equipment Finance | $115,919.14 | $81,143.40 | $115,919.14 | 0 |
| 2014 Freightliner M2 Chip Truck | Western Equipment Finance | $27,650.24 | $19,355.17 | $27,650.24 | 0 |
| 2014 Freightliner M2 & 2024 Witzo Trailer | Western Equipment Finance | $89,759.80 | $62,831.86 | $89,759.80 | 0 |
| JD 333G | John Deere Financial | $112,328.14 | $78,629.70 | $112,328.14 | 0 |
| JD 4066R | John Deere Financial | $19,064.44 | $13,345.11 | $19,064.44 | 0 |
| 2022 Sennebogen | Volvo Financial Services | $401,976.75 | $281,383.73 | $353,192.88 | $48,783.87 |
| 2023 Sennebogen | First Commonwealth Financial Services | $525,000.00 | $367,500.00 | $376,830.00 | 296340 |
| 2021 Bandit Chipper | Financial Pacific Leasing, Inc. | $14,180.97 | $9,926.68 | $14,180.97 | 0 |
| 2023 Bandit Chipper | Financial Pacific Leasing, Inc. | $9,305.64 | $6,513.95 | $9,305.64 | 0 |
| 2023 Bandit Stump Grinder | Financial Pacific Leasing, Inc. | $51,521.11 | $36,064.78 | $51,521.11 | 0 |

26-41101-lsg    Doc 91    Filed 05/07/26    Entered 05/07/26 13:25:39    Page 30 of 50

| | | | | |
|---|---|---|---|---|
| Vehicle Lift | Farmer's & Merchants State Bank | $2,700.00 | $1,890.00 | $2,700.00 |
| 2012 Bandit 250 XP Chipper | Farmer's & Merchants State Bank | $17,100.00 | $11,970.00 | $17,100.00 |
| 2001 Boyd trailer | Farmer's & Merchants State Bank | $1,800.00 | $1,260.00 | $1,800.00 |
| Buckeye tree transplantor | Farmer's & Merchants State Bank | $900.00 | $630.00 | $900.00 |
| Buick Lacrosse Sedan | Farmer's & Merchants State Bank | $3,420.00 | $2,394.00 | $3,420.00 |
| Carry On trailer | Farmer's & Merchants State Bank | $900.00 | $630.00 | $900.00 |
| 2020 Chevrolet 2500 | Farmer's & Merchants State Bank | $33,300.00 | $23,310.00 | $33,300.00 |
| 2017 Chevrolet 3500 | Farmer's & Merchants State Bank | $20,700.00 | $14,490.00 | $20,700.00 |
| Cub Cadet sprayer | Farmer's & Merchants State Bank | $1,800.00 | $1,260.00 | $1,800.00 |
| 2023 Ditch Witch SK 1550 | Farmer's & Merchants State Bank | $33,480.00 | $23,436.00 | $33,480.00 |
| 2014 Ford F150 | Farmer's & Merchants State Bank | $12,600.00 | $8,820.00 | $12,600.00 |
| 2007 F750 chip truck | Farmer's & Merchants State Bank | $12,600.00 | $8,820.00 | $12,600.00 |
| 1993 Franklin 170PGS Swamp King | Farmer's & Merchants State Bank | $19,800.00 | $13,860.00 | $19,800.00 |
| 2022 Griffen trailer | Farmer's & Merchants State Bank | $4,050.00 | $2,835.00 | $4,050.00 |
| 2007 International Durastar Bucket Truck | Farmer's & Merchants State Bank | $13,500.00 | $9,450.00 | $13,500.00 |
| 1985 JD 350C Crawler | Farmer's & Merchants State Bank | $17,100.00 | $11,970.00 | $17,100.00 |
| 1996 JD 690E LC | Farmer's & Merchants State Bank | $37,800.00 | $26,460.00 | $37,800.00 |
| 2022 JD zero turn mower | Farmer's & Merchants State Bank | $3,780.00 | $2,646.00 | $3,780.00 |

| | | | | |
|---|---|---|---|---|
| 2011 Mack CXU600 Truck | Farmer's & Merchants State Bank | $13,500.00 | $9,450.00 | | $13,500.00 |
| 2018 Magnum power washer | Farmer's & Merchants State Bank | $1,350.00 | $945.00 | | $1,350.00 |
| 2020 Mecanil SG280 Jaw Saw | Farmer's & Merchants State Bank | $27,000.00 | $18,900.00 | | $27,000.00 |
| 1997 Miller 250 welder | Farmer's & Merchants State Bank | $2,610.00 | $1,827.00 | | $2,610.00 |
| 2006 Peterbuilt 362 Chip Truck | Farmer's & Merchants State Bank | $58,500.00 | $40,950.00 | | $58,500.00 |
| 2022 PJ dump trailer | Farmer's & Merchants State Bank | $7,020.00 | $4,914.00 | | $7,020.00 |
| 2019 PJ dump trailer | Farmer's & Merchants State Bank | $3,600.00 | $2,520.00 | | $3,600.00 |
| 2022 PJ flatbed trailer | Farmer's & Merchants State Bank | $5,850.00 | $4,095.00 | | $5,850.00 |
| 2024 PJ tiltbed flatbed trailer | Farmer's & Merchants State Bank | $8,100.00 | $5,670.00 | | $8,100.00 |
| 2023 Ryan's 4252 Grapple | Farmer's & Merchants State Bank | $4,950.00 | $3,465.00 | | $4,950.00 |
| 2012 US Cargo sprayer trailer | Farmer's & Merchants State Bank | $1,440.00 | $1,008.00 | | $1,440.00 |
| 2001Vermeer SC1102 stump grinder | Farmer's & Merchants State Bank | $18,900.00 | $13,230.00 | | $18,900.00 |
| Various equipment attachments | Farmer's & Merchants State Bank | $14,310.00 | $10,017.00 | | $14,310.00 |
| Various chainsaws | Farmer's & Merchants State Bank | $17,010.00 | $11,907.00 | | $17,010.00 |
| Various landscape equipment, blowers and trimmers | Farmer's & Merchants State Bank | $5,130.00 | $3,591.00 | | $5,130.00 |
| Receivables | Farmer's & Merchants State Bank | $463,895.69 | $463,895.69 | $172,354.92 | $463,895.69 |
| Accounts | Farmer's & Merchants State Bank | $29,419.00 | $29,419.00 | | $29,419.00 |
| | | $2,787,900.61 | $2,099,524.83 | $1,892,170.79 | $1,265,038.56 |

**4. Valuation of Assets and Amounts of Secured Claim in Relation Thereto as of 02/02/2026.**

For purposes of valuation, the Debtor has considered both fair market value ("FMV") and forced sale value ("FSV") consistent with industry standards for equipment appraisal, as well as collateral values asserted in filed proofs of claim. FMV reflects the price obtainable in an orderly transaction, while FSV reflects liquidation conditions on a forced sale basis. Where creditors have provided collateral values in their proofs of claim, the Debtor has considered and, where appropriate, adopted such values. In the absence of a filed proof of claim, the Debtor has relied upon the January 2025 appraisal. Based on those appraisals, and accounting for depreciation and current market conditions, the Debtor has applied a value equal to ninety percent (90%) of the appraised FMV, which the Debtor believes reasonably reflects current collateral value for purposes of 11 U.S.C. § 506(a). To determine a Forced Sale Valuation, the Debtor has applied a value equal to seventy percent (70%) of the stated Fair Market Value, which the Debtor believes reasonably reflects current collateral value.

To the extent any inconsistency exists between values reflected in proofs of claim, appraisals, or Plan schedules, the Debtor has adopted the value most consistent with 11 U.S.C. § 506(a), giving due consideration to the lesser of such values where appropriate.

**5.     Proceeds of Assets (before deducting amount of secured claims).**

| | | Fair Market Value | Forced Sale Value |
|---|---|---|---|
| (a) | Gross Proceeds Available from Liquidation of Assets | $2,787,900.61 | $2,099,524.83 |
| (b) | Less total of: | | |
| | Secured Claims | -$1,892,170.79 | -$1,892,170.79 |
| | Administrative Expenses | -$43,000.00 | -$43,000.00 |
| | Priority Claims | -$342,146.65 | -$342,146.65 |
| | Prepetition General Unsecured Claims | -$222,120.92 | -$222,120.92 |
| | Total | | |
| (c) | Net Proceeds | $288,462.25 | -$399,913.53 |
| | Proceeds available to pre-petition unsecured creditors (including deficiency claims (all of which total $222,120.92). | $222,120.92 | $0.00 |
| (d) | % available to pre-petition unsecured creditors | 100% | $0.00 |
| (e) | Proceed Available for Equity Interests | $306,009.47 | $0.00 |

**6.     Distribution of Proceeds of Assets in the Event of Liquidation**

a.      Risks, Conditions and Assumptions Regarding Stated Values.

Risks, conditions, and assumptions regarding stated values include the use of fair market value as the primary valuation methodology, consistent with the Debtor's intent to continue operations and not liquidate assets. The Debtor has relied upon January 2025 appraisals as a baseline for equipment valuation and, to account for depreciation, market variability, and asset condition, has applied a reduction to ninety percent (90%) of the appraised fair market value. The Debtor has also considered forced sale value, which reflects liquidation conditions and would result in lower recoveries, but has determined that adjusted fair market value more accurately reflects the value of the collateral for purposes of the Plan. In addition, the Debtor has considered the customized nature of certain equipment, market comparables where

available, and the anticipated costs and delays associated with liquidation in determining these values.

Forced sale value ("FSV") was considered based on industry standards and the Debtor's experience with auction and secondary market sales of similar equipment. The Debtor estimates that equipment would realize approximately seventy percent (70%) of fair market value in a forced sale. These estimates reflect the limited resale market for land clearing equipments, the time constraints associated with liquidation, and typical auction discounts and expenses.

b. Potential Claims and Causes of Action.

The Debtor may possess claims and causes of action against certain creditors, including those arising from purported merchant cash advance transactions, which the Debtor contends may constitute disguised financing arrangements rather than true sales of receivables. Such claims may include recharacterization, disallowance, or reduction of such claims, and the assertion of defenses under applicable law, including usury and unenforceability. The Debtor expressly reserves all rights to pursue such claims.

c. Guarantees of the Debtor.

Adam Burman has executed personal guarantees in connection with certain obligations of the Debtor. Such guarantees are obligations of a non-debtor and are not modified, released, or discharged by this Plan. Notwithstanding the foregoing, the treatment of claims under this Plan is intended to satisfy and resolve the Debtor's

liability on such obligations, and any corresponding liability of Mr. Burman shall be reduced to the extent of payments made under the Plan.

       d.      Executory Contracts and Unexpired Leases

Pursuant to 11 U.S.C. § 365, the Debtor hereby assumes the Master Lease Agreement with Trans Lease, Inc. dated August 18, 2021, together with all related schedules and equipment leases for (1) Kenworth T880 Crane. The Debtor was current as of the petition date, and will resume lease payments as of the Effective Date, and shall continue to perform all obligations arising under the lease in the ordinary course, including ongoing payment obligations, insurance requirements, and maintenance of the equipment. The Debtor has determined that assumption of this lease is in the best interests of the estate, as the equipment subject to the lease is necessary for continued operations and generation of revenue under the Plan. Monthly lease payments are $5,407.11 and the current lease matures September 18, 2027.

All executory contracts and unexpired leases not expressly assumed herein shall be deemed rejected as of the Effective Date.

## 7.    Implementation of the Plan

The Debtor's projected net operating income exceeds Plan obligations and provides a reasonable cushion for contingencies, demonstrating feasibility under 11 U.S.C. § 1129(a)(11).

       a.      Financial Data

            i.      Three Years Pre-Petition.

Burman's Tree Services, LLC's three-year pre-petition profit and loss statements are attached as Schedule B.

A brief summary of three years pre-petition follows:

The Debtor experienced significant growth in gross revenue during the three years preceding the Petition Date, increasing from approximately $2.43 million in 2023 to $2.67 million in 2024, and to approximately $3.52 million in 2025. While the Debtor maintained strong gross income and operating margins during this period, net income declined due to increased operating expenses, including payroll, fuel, equipment costs, and debt service obligations. In 2023, the Debtor generated net income of approximately $113,563.83. In 2024, despite increased revenues, the Debtor incurred a net loss of approximately $48,719.17, driven in part by increased interest expense, depreciation, and operating costs. In 2025, the Debtor's revenue increased substantially; however, rising costs associated with expansion, equipment acquisition, and financing obligations resulted in a net loss of approximately $55,059.19.

The Debtor's financial performance reflects a growing business with strong revenue generation but increasing cost structure and debt service burdens leading up to the filing. Notwithstanding these challenges, the Debtor maintained substantial operations and revenue streams, forming the basis for its proposed reorganization and continued operations under the Plan.

ii.    Post-Petition to April 30, 2026.

The instant Chapter 11 proceeding was commenced on February 22, 2022. Sales & revenue since filing are $771,739.80, Cost of Sales were $505,743.81, and Expenses of $452,026.80.

iii.    Projected Post-Confirmation – Months 1-60.

The Debtor's projections demonstrate that it will generate sufficient revenue to fund operations and make the payments required under the Plan. The projections are based upon, and modeled after, the Debtor's actual 2025 operating performance, which reflects consistent revenue generation at similar or higher levels than those projected herein. Projected monthly revenues for 2026 range from approximately $227,000 to $429,000, with the Debtor maintaining an overall positive cash balance throughout the projection period. While certain months reflect temporary operating shortfalls, these are offset by stronger revenue periods. The Debtor has continued operations post-petition under a Court-approved cash collateral budget, demonstrating the ability to manage expenses and maintain business operations. Based on these projections, historical performance, and current operations, the Debtor believes it will be able to meet its obligations under the Plan and that confirmation is not likely to be followed by liquidation or further reorganization.

Schedule A sets for the 2026 projections and five years thereafter.

iv.    Post-Confirmation Management

Adam Burman shall continue as the General Manager, Chief Estimator, Process

Engineer, and Business Development Manager, and shall continue to receive an $100,000 annual salary plus fringe benefits. Adam Burman shall continue as the Debtor's sole member manager during the term of the Plan. The Debtor's Operating Agreement shall be deemed amended on the Effective Date of Plan to prohibit the issuance of new nonvoting equity securities and the Plan contains only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner and selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee. As of the Effective Date, the Operating Agreement of Burman's Tree Services, LLC shall be modified and amended to the extent required by 11 U.S.C. § 1123(a)(6) and all members of the reorganized Debtor that hold an equity interest issued or outstanding after a confirmation order is entered shall be subject to such Operating Agreement, as amended.

b. Tax ramifications in a confirmed plan.

Confirmation of the Plan may have tax consequences to the Debtor and creditors. Creditors are encouraged to consult their own tax advisors regarding the tax effects of the Plan.

c. Termination of the Subchapter V Trustee

If the Plan is confirmed under section 1191(a), the Subchapter V Trustee shall continue to exercise those powers and perform those duties specified in Bankruptcy Code section 1183 through Substantial Confirmation of the Plan, at which point her

services shall terminate.

If the Plan is confirmed under section 1191(b), the Subchapter V Trustee shall not be terminated until she has performed such duties as are described in sections 1183 and 1194(b) and such other duties as she may have been assigned by the Bankruptcy Court prior to the Effective Date.

## 8. Definitions

Scope of Definitions. For purposes of this Plan, except as expressly otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings assigned to them in this Section of the Plan. In all references herein to any parties, persons, entities, or corporations, the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text may require.

    a.    Administrative Expense shall mean any cost or expense of administration of the Chapter 11 case allowable under Section 507(a) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the estate of the Debtor, any actual and necessary expense of operating the business of the Debtor, any indebtedness or obligation incurred or assumed by the Debtor in connection with the conduct of its business or for the acquisition or lease of property or the rendition of services to the Debtor, all allowances of compensation and reimbursement of expenses, any fees or charges

assessed against the estate of any Debtor under Chapter 123, Title 28, of the United States Code, and the reasonable fees and expenses incurred by the Proponent in connection with the proposal and confirmation of this Plan.

b.  Allowed when used as an adjective preceding the words "Claims" or "Equity Interest", shall mean any Claim against or Equity Interests of the Debtor, proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claim or Equity Interest against such Debtor, or, if no proof of claim or Equity Interest is filed, which has been or hereafter is listed by the Debtor as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed with the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, Local Rules, or as to which any objection has been interposed and such Claim has been allowed in whole or in part by a Final Order. Unless otherwise specified in the Plan, "Allowed Claim" and "Allowed Equity Interest" shall not, for purposes of computation of distributions under the Plan, include interest on the amount of such Claim or Equity Interest from and after the Petition Date.

c.  Allowed Administrative Expense shall mean any Administrative

Expense allowed under Section 507(a)(l) of the Bankruptcy Code.

d. Allowed Unsecured Claim shall mean an Unsecured Claim that is or has become an Allowed Claim.

e. Bankruptcy Code shall mean the Bankruptcy Reform Act of 1978, as amended, and as codified in Title 11 of the United States Code.

f. Bankruptcy Court shall mean the United States Bankruptcy Court for the EASTERN DISTRICT OF MICHIGAN having jurisdiction over the Chapter 11 Case and, to the extent of any reference made pursuant to 28 U.S.C. Sec. 158, the unit of such District Court constituted pursuant to 28 U.S.C. Sec. 151.

g. Bankruptcy Rules shall mean the rules and forms of practice and procedure in bankruptcy, promulgated under 28 U.S.C. Sec. 2075 and also referred to as the Federal Rules of Bankruptcy Procedure.

h. Chapter 11 Case shall mean a case under Chapter 11, Subchapter V of the Bankruptcy Code in which Burman's Tree Services, LLC is the Debtor.

i. Claim shall mean any right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor whether or not

such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. All claims as such term is defined in section 10 1(5) of the Bankruptcy Code.

j.     Class shall mean a grouping of substantially similar Claims or Equity Interests for common treatment thereof pursuant to the terms of this Plan.

k.     Code shall mean Title 11 of the United States Code, otherwise known as the Bankruptcy Code.

l.     Confirmation shall mean the entry of an Order by this Court approving the Plan in accordance with the provisions of the Bankruptcy Code.

m.     Creditor shall mean any person that has a Claim against the Debtor that arose on or before the Petition Date or a Claim against the Debtor's estate of any kind specified in section 502(g), 502(h) or 502(I) of the Bankruptcy Code. This includes all persons, corporations, partnerships, or business entities holding claims against the Debtor.

n.     Debt means, refers to and shall have the same meaning ascribed to it in Section 101(12) of the Code.

o.     Debtor shall mean Burman's Tree Services, LLC.

p.     "Effective Date" means the first business day after the Confirmation Order becomes final and non-appealable, and all conditions to effectiveness have been satisfied or waived.   Except as otherwise

provided herein, all payments under the Plan shall commence on the first payment date following the Effective Date.

q. Estate shall mean the estate created under 11 U.S.C. § 541 by reason of commencement of this case.

r. Equity Interest Holder shall mean the holder of an equity interest in the Debtor.

s. Equity Interest shall mean any interest in the Debtor represented by membership agreement, operating agreement, warrants, options, or other rights to purchase any membership interest in the Debtor.

t. "First Payment Date" means the first regular payment date following the Effective Date, as determined by the Debtor in the ordinary course.

u. Final Order shall mean an order of the Bankruptcy Court or a court of competent jurisdiction to hear appeals from the Bankruptcy Court which, not having been reversed, modified, or amended, and not being stayed, and the time to appeal from which or to seek review or rehearing of which having expired, has become final and is in full force and effect.

v. Impaired when used as an adjective preceding the words "Class of Claims" or "Class of Equity Interest", shall mean that the Plan alters the legal, equitable, or contractual rights of the member of that class.

w. Person shall mean an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an

unincorporated organization, or a government or any political subdivision thereof or other entity.

x. Petition Date shall mean the date on which the Debtor filed this petition for relief commencing the Chapter 11 Case.

y. Plan shall mean the Plan of Reorganization filed in these Proceedings, together with any additional modifications and amendments.

z. Priority Tax Creditor shall mean a Creditor holding a priority tax claim.

aa. Priority Tax Claim shall mean any Claim entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code, but only to the extent it is entitled to priority under such subsection.

bb. Proceedings shall mean the Chapter 11 Case of the Debtor.

cc. Reorganized Debtor means the Debtor after confirmation of the Plan.

dd. Secured Claim means and refers to a Claim which is secured by a valid lien, security interest, or other interest in property in which the Debtor has an interest which has been perfected properly as required by applicable law, but only to the extent of the value of the Debtor's interest in such property, determined in accordance with Section 506(a) of the Bankruptcy Code.

ee. Unsecured Claim shall mean any Claim against the Debtor which arose or which is deemed by the Bankruptcy Code to have arisen prior to the Petition Date for such Debtor, and which is not (I) a secured claim

pursuant to Section 506 of the Bankruptcy Code, as modified by section 1111(b) of the Bankruptcy Code, or (ii) a Claim entitled to priority under sections 503 or 507 of the Bankruptcy Code. "Unsecured Claim" shall include all Claims against the Debtor that are not expressly otherwise dealt with in the Plan.

ff.    Other Definitions, a term used and not defined herein but that is defined in the Bankruptcy Code shall have the meaning set forth therein. The words "herein", "hereof", "hereto, "hereunder", and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. Moreover, some terms defined herein are defined in the section in which they are used.

**9.    Legal Requirements, as follows:**

a.    Voting procedures

Under the Bankruptcy Code, the only classes that are entitled to vote to accept or reject a plan are classes of claims, or equity interest, that are impaired under the plan. Accordingly, classes of claims or interests that are not impaired are not entitled to vote on the plan.

Creditors that hold claims in more than one impaired class are entitled to vote separately in each class. Such a creditor will receive a separate ballot for all of its claims in each class (in accordance with the records of the Clerk of the Court) and should complete and sign each ballot separately. A creditor who asserts a claim in

more than one class and who has not been provided with sufficient ballots may photocopy the ballot received and file multiple ballots.

Votes on the plan will be counted only with respect to claims: (a) that are listed on the Debtor's Schedules of Assets and Liabilities other than as disputed, contingent or unliquidated; or (b) for which a proof of claim was filed on or before the bar date set by the Court for the filing of proofs of claim (except for certain claims expressly excluded from that bar date or which are allowed by Court order). However, any vote by a holder of a claim will not be counted if such claim has been disallowed or is the subject of an unresolved objection, absent an order of the Court allowing such claim for voting purposes pursuant to 11 U.S.C. §502 and Bankruptcy Rule 3018.

Voting on the plan by each holder of a claim or interest in an impaired class is important. After carefully reviewing the plan and disclosure statement, each holder of such a claim or interest should vote on the enclosed ballot either to accept or to reject the plan, and then return the ballot by mail to the debtor's attorney by the deadline previously established by the court.

Any ballot that does not appropriately indicate acceptance or rejection of the plan will not be counted.

A ballot that is not received by the deadline will not be counted.

If a ballot is damaged, lost, or missing, a replacement ballot may be obtained by sending a written request to the Debtor's attorney.

B.     Acceptance

The Bankruptcy Code defines acceptance of a plan by an impaired class of claims as acceptance by the holders of at least two-thirds in dollar amount, and more than one-half in number, of the claims of that class which actually cast ballots. The Bankruptcy Code defines acceptance of a plan by an impaired class of equity interests as acceptance by holders of at least two-thirds in number of the equity interests of that class that actually cast ballots. If no creditor or interest holder in an impaired class votes, then that class has not accepted the plan.

C.      Confirmation

11 U.S.C. 1129(a) establishes conditions for the confirmation of a plan. These conditions are too numerous and detailed to be fully explained here. Parties are encouraged to seek independent legal counsel to answer any questions concerning the Chapter 11 process.

Among the several conditions for confirmation of a plan under 11 U.S.C. 1129(a) are these:

1.      Each class of impaired creditors and interest must accept the plan, as described in paragraph 5b, above.

2.      Either each holder of a claim or interest in a class must accept the plan, or the plan must provide at least as much value as would be received upon liquidation under Chapter 7 of the Bankruptcy Code.

D.      Modification

The debtor reserves the right to modify or withdraw the plan at any time before

confirmation.

E. Effect of confirmation

If the plan is confirmed by the Court:

1. Its terms are binding on the Debtor, all creditors, members, and other parties in interest, regardless of whether they have accepted the plan.

2. Except as provided in the plan:

    (a) In the case of a corporation that is reorganizing and continuing business;

        (1) All claims and interests will be discharged.

        (2) Creditors and shareholders will be prohibited from asserting their claims against or interest in the debtor or its assets.

    (b) In the case of a corporation that is liquidating and not continuing its business:

        (1) Claims and interests will not be discharged.

        (2) Creditors and shareholders will not be prohibited from asserting their claims against or interests in the debtor or its assets.

    ( c ) In the case of an individual or husband and wife:

        (1) Claims will be discharged, except as provided in 11

U.S.C. " 523 and 727(a). Unless the court orders otherwise, the discharge will be entered after completion of plan payments as provided in '1141(d)(5)(a). It is the usual practice of the court to close Chapter 11 cases after confirmation. It is the responsibility of the individual debtor to file a motion to reopen the case for entry of discharge upon completion of plan payments.

(2)     Creditors will be prohibited from asserting their claims except as to those debts which are not discharged or dischargeable under 11 U.S.C. " 523 and 727(a).

Dated: May 4, 2026

/s/ Adam Burman

_____

Burman's Tree Services, LLC.
By: Adam Burman
Its. President

Dated: May 4, 2026

/s/ Donald C.  Darnell

_____

Donald C.  Darnell P55268
8005 Main St., Ste. 5
Dexter, Michigan 48130
734-424-5200
dondarnell@darnell-law.com